UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 8:16-cr-11-WFJ-TGW

ANTONIO CHAVEZ
_____/

**ORDER**

This matter comes before the Court on Defendant Antonio Chavez's Motion for Compassionate Relief (Doc. 200), filed on May 28, 2024. Proceeding *pro se*, Mr. Chavez requests compassionate release based upon his medical conditions and lack of adequate treatment in prison. The United States of America filed a response in opposition on June 14, 2024. (Doc. 202). For the reasons set forth below, the Motion is denied.

**I. Background**

On May 4, 2017, Mr. Chavez pleaded guilty to one count of conspiracy to possess with intent to distribute five-hundred grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), and one count of possession with intent to distribute five-hundred grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). (Docs. 21, 116). The Court accepted Mr. Chavez's guilty plea (Doc. 121) and, on February 9, 2018, sentenced him to a 210-month term of imprisonment, followed by five years of supervised release. (Doc. 150).

At the time of sentencing, Mr. Chavez qualified as a career offender with multiple convictions related to the sale of controlled substances, as well as convictions for violent crimes and firearms offenses. (Doc. S-145 at 7-11). Based upon a total offense level of 34 and a criminal history category of VI, Mr. Chavez's advisory sentencing range was 262-327 months. *Id.* On the Government's motion, the Court granted a downward variance from the guidelines in consideration of Mr. Chavez's personal characteristics, including his health and substance abuse issues. (Doc. S-151).

Mr. Chavez is 41 years old, and his projected release date is November 12, 2029.[1] *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on June 24, 2025). Although he was housed at FCI Jesup in Georgia, he has since been transferred to FCI Coleman Low in Sumterville, Florida. *Id.* He has served slightly less than one-half of his sentence.

By way of the instant motion, Mr. Chavez seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that his medical circumstances constitute extraordinary and compelling reasons justifying release. (Doc. 200 at 4). Specifically, Mr. Chavez suffers from glaucoma, mild lipid anomalies, latent tuberculosis, diminished lung capacity, umbilical hernia, lipoma, osteoarthritis of the knee, hypertension, morbid obesity, liver disease, and prediabetes. *Id.* He asserts that his ability to care for himself has been severely diminished by the "combination[] [of his] medical conditions" and the BOP's failure to provide him with adequate care. (Doc. 200 at 4). To buttress his request, Mr. Chavez avers that he is not a danger to the community if released, as his rehabilitation efforts have been "mean[ing]ful, to

---

[1] At the time of filing, Mr. Chavez's projected release date was October 2, 2030. (*See* Docs. 200 at 7; 202 at 2).

2

wit" and the BOP has designated his recidivism level as low. (Doc. 200 at 3). He also notes his participation in educational programs, including obtaining his GED. *Id.*

Responding in opposition, the Government argues that (1) Mr. Chavez is not entitled to compassionate release because he has failed to exhaust his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A)(i); (2) his medical conditions do not meet the strict definition of "extraordinary and compelling" under USSG § 1B1.13(b); and (3) the section 3553(a) factors weigh heavily against release. (Doc. 202).

## II. Legal Standard

Effective December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to move for reduction of his imprisonment term "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009). Once a defendant has satisfied this exhaustion requirement, a court may—after considering the factors set forth in 18 U.S.C. § 3553(a)[2] to the extent they are applicable—reduce a defendant's sentence if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is

---

[2] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

consistent with relevant policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). But it is the defendant that bears the burden of demonstrating that release is warranted. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

"Following the recent amendments to the sentencing guidelines, which went into effect on November 1, 2023, there are now six extraordinary and compelling reasons justifying relief under § 1B1.13: (1) the defendant's medical circumstances, (2) advanced age, (3) family circumstances, (4) whether the defendant is a victim of abuse, (5) 'other reasons,' and (6) whether the defendant received an unusually long sentence." *United States v. Allen*, 717 F. Supp. 3d 1308, 1312 (N.D. Ga. 2024).

### III. Discussion

As a threshold matter, it is not clear that Mr. Chavez has exhausted his administrative remedies. Under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or else wait thirty days after the warden's receipt of a request before filing in district court. BOP records show that Mr. Chavez filed a request for administrative relief on October 6, 2020. (Doc. 202-1 at 10). This request was denied on January 6, 2021. *Id*. at 3.

Although certain grounds for the present Motion are the same, the Government argues that there is no evidence that Mr. Chavez has ever requested administrative relief asserting all his various medical conditions as grounds for relief. The Court agrees. The only overlap between Mr. Chavez's request for administrative relief on October 6, 2020, is a brief sentence in the current motion citing medical conditions and COVID-19 as grounds for compassionate

4

release. *Compare* Doc. 200 at 1 (asserting glaucoma, mild lipid anomalies, latent tuberculosis, morbid obesity, hypertension, prediabetes, osteoarthritis of the knee, diminished lung, liver disease, umbilical hernia, and lipoma and testing positive for COVID-19 as reasons for compassionate release), *with* Doc. 202-1 at 10 (asserting "his medical condition" and increased risk of contracting COVID-19 as grounds for relief). Mr. Chavez avers in his Motion that "the 'enclosed' documents" demonstrate that he has exhausted his administrative remedies. (Doc. 200 at 2-3). The Government responds, and the Court agrees, that the only record of this request is Mr. Chavez's form motion in which he states he filed a request on April 24, 2024, and a box that he checked indicating he did not receive a response from the warden. (Doc. 200 at 8).

To the extent that Mr. Chavez asserts new grounds for relief, he must satisfy the exhaustion requirement again. *See United States v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275, 1286-87 (S.D. Fla. 2020) (finding defendant's motion for compassionate relief was not ripe for review where he failed to present a request to the warden based on COVID-19 concerns); *United States v. Robinson*, No. 19-193-KD-B-11, 2021 WL 684576, at *2 (S.D. Ala. Feb. 22, 2021) (finding defendant's subsequent motions for compassionate release premature for failure to exhaust administrative remedies with respect to her hypertension or high BMI diagnoses); *USA v. Beeks et al*, No. 1:09-cr-320, Dkt. No. 602, at *5 (N.D. Ga. Jan. 10, 2024) (denying defendant's motion for compassionate release because he did not exhaust his administrative remedies with respect to his thyroid disease, liver disease, colon polyps, and diabetes diagnoses, COVID-19 concerns, and other health conditions). Without exhaustion of his administrative remedies, Mr. Chavez is not entitled to relief under section 3582(c)(1)(A). *See United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (holding that a

5

district court must enforce § 3582(c)(1)(A)(i)'s exhaustion requirement by denying relief when no request to the warden is shown).

Even if Mr. Chavez had exhausted his administrative remedies, the Court would find that his Motion is due to be denied. Here, Mr. Chavez is 41 years old and was not sentenced until 2018. Thus, he does not qualify for compassionate release under the first provision of 18 U.S.C. § 3582(c)(1)(A)(ii) and must instead demonstrate an extraordinary and compelling reason to satisfy 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Chavez argues that his medical conditions constitute such a reason.

Pursuant to the policy statement at USSG § 1B1.13(b)(1), an incarcerated individual's medical circumstances can constitute an extraordinary and compelling reason for compassionate release when he is: (1) suffering from a terminal illness; or (2) suffering from a serious physical or medical condition that substantially diminishes his ability to care for himself within the prison environment and from which he is not expected to recover. USSG § 1B1.13(b)(1)(A)-(D).

Mr. Chavez files medical records in support of his claimed conditions. (Docs. 200; 200-1). And the Government filed additional medical records under seal. (Docs. S-203; S-203-1). Although Mr. Chavez's records document his various medical conditions, they do not demonstrate that any of these conditions—alone or combined—are terminal or of such a nature that they substantially diminish his ability to care for himself within the prison environment. *See* USSG § 1B1.13(b)(1); *United States v. Rodriguez-Campana*, 519 F. Supp. 3d 1159, 1165 (S.D. Fla. 2021) (denying motion for compassionate release filed by inmate who suffered from hypertension, high cholesterol, prediabetes, and had a history of lung problems, where inmate had failed to demonstrate that "any of his present ailments are terminal, that

they substantially diminish his ability to provide self-care within the correctional facility, or that they are not being properly attended to by the BOP."); *United States v. Wedgeworth*, 837 Fed. App'x. 738, 739-40 (11th Cir. 2020) (affirming lower court's finding of no extraordinary and compelling reason for a defendant suffering from obesity and chronic hypertension because those conditions were not terminal and did not substantially limit the prisoner's ability for self-care).

Contrary to his position that his ability to self-care is diminished, Mr. Chavez's medical records make clear that he receives routine medical appointments, lab tests and that his obesity-related conditions are managed through a combination of prescription medication and lifestyle changes such as calorie reduction and exercise. (*See* Docs. 200-1 at 2-3, 7, 9-10, 15, 19; S-203 at 4, 14, 33). Nor has Mr. Chavez demonstrated that his conditions are permanent and severe enough to prevent him from caring for himself within the prison environment. Rather, there is ample evidence that his conditions are stable, controlled, and actively monitored. The discharge summaries from his most recent chronic care clinic appointment indicate that he reported no respiratory issues related to his diminished lung diagnosis (Docs. 200-1 at 6; S-203 at 1) and that he remained asymptomatic for tuberculosis. (Doc. 200-1 at 17). Moreover, as the Government points out, Mr. Chavez listed no complaints of pain or poor vision during his follow-up optometrist visit for suspected glaucoma on October 25, 2023. (*See* Docs. 200-1 at 5; S-203 at 10). Indeed, Mr. Chavez's medical records provide numerous examples that showcase he may sufficiently care for himself and that he is expected to recover from many of his medical conditions through self-care.

Next, Mr. Chavez alleges that FCI Jesup "cannot support [his] ability to maintain a 'HEALTHY DIET,'" placing him at "serious risk of [health] deterioration … or death." (Doc. 200 at 4). His records, however, demonstrate that the BOP has provided him with counseling and dietary guidance to manage his weight and health, including instructions to access a "Heart Healthy" option at mealtimes. (Doc. 200-1 at 2, 7). Regarding his hernia, Mr. Chavez's records indicate that FCI medical staff have developed a treatment plan and routinely counsel him on weight management in preparation for potential surgical intervention. (Doc. 200-1 at 2, 15; *see also* Doc. S-203 at 12-15 (full clinical visit report)). With respect to his lipoma, the Mayo Clinic's website describes lipoma as a benign, slow-growing, fatty tumor beneath the skin surface. *See* Lipoma, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/lipoma/symptoms-causes/syc-20374470 (last accessed July 7, 2025). Mr. Chavez's medical records indicate that on November 2, 2021, an ultrasound revealed a mass in Mr. Chavez's left thigh or "possible lipoma" and his treating physician recommended additional testing if necessary. (Doc. 200-1 at 18). His medical records offer no further documentation concerning this condition. And regarding his osteoarthritis, his records indicate that he is receiving regular treatment and medication for his knee. (Doc. 200-1 at 3). These facts fail to establish that Mr. Chavez requires specialized care or that his health is deteriorating from inadequate treatment that would satisfy the requirements for release. As such, the medical circumstances delineated in USSG. § 1B1.13(b)(1) are not applicable.

Mr. Chavez's reliance on the COVID-19 pandemic is similarly unavailing. Although Mr. Chavez contracted COVID-19 on July 17, 2020, he remained asymptomatic. (Doc. 200 at 20). Further, Mr. Chavez has not sufficiently alleged or established that there is an

8

"ongoing outbreak" of COVID-19 or a current public health emergency.[3]  The Court notes that any concerns raised about the medical care at FCI Jesup are moot as Mr. Chavez has since been relocated per BOP records.

Because none of Mr. Chavez's medical conditions—individually or combined—are severe enough to qualify under § 1B1.13(b)(1) or are being appropriately addressed by prison medical staff, Mr. Chavez has not demonstrated "extraordinary and compelling" medical circumstances.

IV.

Even if Mr. Chavez had exhausted his administrative remedies and demonstrated "extraordinary and compelling" reasons, the Court must still weigh the section 3553(a) factors and determine whether compassionate release is appropriate.  Here, all relevant factors counsel in favor of denial.

While the Court commends Mr. Chavez's efforts at rehabilitation, including his participation in educational programs and obtaining his GED, it is not enough to support early release. (Doc. 200 at 3).  Mr. Chavez pled guilty to his role in distributing more than a kilogram of methamphetamine, and at sentencing, qualified as a career criminal as defined under USSG. § 4B1.1(b).  Indeed, at the time of sentencing, Mr. Chavez had an 18-year history of criminal conduct, and his sentence reflects this reality.  (*See* Doc. 145 at 6-13). Moreover, the Court sentenced Mr. Chavez to 210 months' imprisonment—a fifty-two-month downward variance from the bottom of his advisory guideline range—in consideration of his untreated long-term substance abuse issues. (Doc. 150 at 2).  If Mr. Chavez were

---

[3] The COVID-19 federal Public Health Emergency expired in May 2023. (*See* National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (Apr. 10, 2023).

released now, he will have served a little less than half of his original sentence, below both his guideline range and favorable sentence. The Court finds that granting Mr. Chavez compassionate release at this juncture would not reflect the seriousness of his crime and undermine the goals of protecting public safety, deterring recidivism, and promoting respect for the law.

Mr. Chavez failed to exhaust administrative remedies and cannot demonstrate "extraordinary and compelling" reasons for release. In addition, the section 3553(a) factors strongly counsel against early release. Accordingly, Antonio Chavez's *pro se* Motion for Compassionate Release (Doc. 200) is **DENIED**.

**DONE** and **ORDERED** at Tampa, Florida, on July 31, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE